Argued March 29, affirmed April 16, petition for rehearing denied May 10, petition for review denied July 3, 1973

# STATE OF OREGON, *Respondent, v.* AARON H. PEREZ, aka YOGRAIR SINCLAIR (No. 1910-C), *Appellant.*

508 P2d 833

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for appellant.

*John W. Osburn,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

FORT, J.

Defendant was convicted of first degree arson. ORS 164.325. He appeals, asserting as his sole assignment of error the failure of the trial court to grant his motion for a directed verdict of acquittal. Specifically he urges the state failed to prove that the fire he set endangered "protected property" within the meaning of ORS 164.325 and ORS 164.305 (1).

On the evening of August 26, 1972, Ontario Police Officer Don Howes parked his Chevrolet pickup and Kit camper in Ray's Food Fair parking lot. He was conducting a stakeout of the vehicle while sitting in an unmarked police car across the street. The camper contained a stove, refrigerator, heater and sleeping accommodations for four. At 11 p.m. Howes observed a 1969 jeep arrive and park side by side next to the camper, a few feet apart. Shortly after 11 p.m., Howes saw a person wearing clothes similar to those the defendant Perez was wearing during the course of the trial. The defendant matched the officer's description of the man he saw. Howes testified this person began looking into cars which were parked in the lot.

Howes maintained the stakeout until 2:20 a.m. At that time Howes saw the defendant walk down in front of Ray's Food Fair back of the camper. He came out from behind the pickup, walked to the driver's door of the jeep and stood there for two minutes. The defendant was looking into the window of the jeep, and Howes could see an orange light inside of it. At that time the defendant walked away. Howes first saw a

very dull light, then flames. Howes proceeded to arrest the defendant half a block from where the vehicle was parked.

A newspaper and one paper match were recovered from the jeep. The match had been found behind the driver's seat in the jeep. The defendant had dropped a matchbook onto the pavement and Howes picked it up. The fire was soon extinguished and caused only $25 to $30 damage to the front seat and arm rest.

ORS 164.325 provides:

"(1) A person commits the crime of arson in the first degree if, by starting a fire or causing an explosion, he intentionally damages:

"(a) Protected property of another; or

"(b) Any property, whether his own or another's, and such act recklessly places another person in danger of physical injury or protected property of another in danger of damage.

"(2) Arson in the first degree is a Class A felony."

"Protected property" is defined in ORS 164.305 (1) as "any structure, place or thing customarily occupied by people, including 'public buildings' as defined by ORS 479.010 and 'forest land' as defined by ORS 477.001."

The Criminal Law Revision Commission's Final Draft of July, 1970, in commenting on what is now ORS 164.325, stated in pertinent part:

"The aim of the Commission is to protect human life and safety by enhancing the degree of arson to first degree when the property involved is a building, structure or thing of a kind which is typically occupied by people. The risk to human life or safety is especially great where such property is set afire.

Further, the Commission recognizes the danger from fires which occur during riots or civil disturbances, and which occur in many types of structures, buildings or things which vary greatly due to the complexity of our urban society. Some types of things such as boats, campers, etc., are customarily occupied by people at some times and places and not at others. The following guidelines are meant to aid in interpreting the phrase 'customarily occupied by people' as it is used within the definition of 'protected property' in § 141 of this article.

"In instructing jurors, in ruling on motions for judgment of acquittal, or wherever a determination must be made as to whether a certain structure, place or thing is 'customarily occupied by people,' we expect the following meanings to be used: for purposes of § 144 of this Code, a building, structure or thing is customarily occupied by people if:

"(a) By reason of circumstances of time and place when the fire or explosion occurs, people are normally in the building, structure or thing; or

"(b) Circumstances are such as to make the fact of occupancy by persons a reasonable possibility.

"Because it will normally be a jury question whether the state has proved that the building, structure or thing is 'customarily occupied,' the jury will be appropriately instructed that if they find it is customarily occupied the crime would be first degree arson; if they find it is not customarily occupied, the crime would be second degree arson." Proposed Oregon Criminal Code Final Draft and Report 149-50, Art 16, § 144 (July 1970).

Defendant does not deny the fire he was found to have started placed the camper in danger. He claims only that there was no reasonable possibility that it was occupied when the fire occurred.

We do not agree. We cannot say as a matter of law that there was no reasonable possibility that a camper parked in that parking lot at 2:20 a.m. on a summer night in Ontario was not something "customarily occupied by people." The court properly submitted the question to the jury.

Affirmed.

THORNTON, J., dissenting.

As I view this record the state failed to introduce sufficient evidence to establish the crime of first degree arson.

In order to prove the crime charged the state had to show that the subject matter was "protected property." "Protected property" is defined in ORS 164.305 as follows:

"As used in ORS 164.305 to 164.365, except as the context requires otherwise:

"(1) 'Protected property' means any structure, place or thing customarily occupied by people, including 'public buildings' as defined by ORS 479.010 and 'forest land' as defined by ORS 477.001.

"* * * * * *"

"Customarily" as defined by 10A Words and Phrases 529, means "* * * usually, habitually, according to the customs, general practice or usual order of things, regularly * * *." This definition appears to be in harmony with the commentary of the Criminal Law Revision Commission in defining "customarily occupied," which is quoted in the majority opinion.

The evidence established that the subject pickup-camper was not occupied at the time defendant was charged with setting the fire to the adjoining vehicle. The only evidence introduced by the state that it had

ever been "occupied by people" was the testimony of its owner, Officer Howes, who was asked: "Have you ever had occasion to sleep in this camper?" He replied, "Yes." On cross-examination he was asked: "Have you ever had occasion to sleep in your camper at Ray's Food Fair parking lot [the scene of the alleged crime]?" He replied, "No." He was next asked: "At any other parking lot in a grocery store?" He again replied, "No."

It would be my conclusion that in the absence of some evidence by the state that campers were "customarily occupied by people" (ORS 164.305) in such parking lots at that hour of the night, defendant could not be found guilty of first degree arson, but only of "reckless burning" under ORS 164.335.

I would modify the judgment by finding defendant guilty of reckless burning and remand the case to the trial court for resentencing. *State v. Braley,* 224 Or 1, 355 P2d 467 (1960); *State v. Shirley,* 7 Or App 166, 488 P2d 1401 (1971), Sup Ct *review denied* (1972).